IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LISA M. TAYLOR,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Civil No. 13-cv-968-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Lisa M. Taylor, represented by counsel, seeks judicial review of the final agency decision denying her Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in May, 2011, alleging disability beginning on February 9, 2011. (Tr. 13). After holding an evidentiary hearing, ALJ Randolph E. Schum denied the application for benefits in a decision dated July 30, 2012. (Tr. 13-22). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c).  See, Doc. 12.

**Issues Raised by Plaintiff**

Plaintiff raises the following points:

1. The ALJ failed to properly evaluate plaintiff's mental impairments.

2. The ALJ's credibility determination was not supported by substantial evidence.

3. The RFC is conclusory and is not supported by substantial evidence.

**Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2]  For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. §423(d)(1)(A)**.

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  **42 U.S.C. §423(d)(3)**.  "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.  **20 C.F.R. §§ 404.1572**.

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  As is relevant to this case, the DIB and SSI statutes are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.  Most citations herein are to the DIB regulations out of convenience.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, **649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **20 C.F.R. §§ 404.1520;** *Simila v. Astrue*, **573 F.3d 503, 512-513 (7th Cir. 2009);** *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992).**

If the answer at steps one and two is "yes," the claimant will automatically

be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, **737 F.2d 714, 715 (7th Cir. 1984).** See also, *Zurawski v. Halter*, **245 F.3d 881, 886 (7th Cir. 2001**) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See**,** *Books v. Chater*, **91 F.3d 972, 977-78 (7th Cir. 1996)** (citing *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir. 1995)**).

The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, **402 U.S. 389, 401 (1971).** In reviewing for "substantial

evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

## The Decision of the ALJ

ALJ Schum followed the five-step analytical framework described above. He determined plaintiff had not been engaged in substantial gainful activity since the date of her application. He found plaintiff had severe impairments of obesity, residuals of hernia surgeries, and degenerative disk disease of the lumbar spine. The ALJ determined these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light level, with some limitations. Based on the testimony of a vocational expert (VE), the ALJ found the plaintiff was able to perform her past work as a clerk in an insurance office, a cashier, and an office manager.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

5

Plaintiff was born on September 4, 1964. She is insured for DIB through December 31, 2014.³ She completed the twelfth grade in school and had no other formal education or training. (Tr. 195).

According to plaintiff she had a number of health problems that made her unable to work including chronic pain, residuals of recurrent hernia with surgical complications, chronic severe abdominal pain and immobility, irritable bowel syndrome, anxiety disorder, depression, and chronic fatigue. (Tr. 149).

Plaintiff previously worked as an insurance agent assistant, cashier, "keyholder", office manager, and a sorter. (Tr. 151).

In a Function Report submitted in May, 2011, plaintiff stated her sleep was disrupted almost daily because of pain and discomfort. She was no longer able to do all of the housework without assistance nor was she able to help with lawn care. (Tr. 173). She was able to make breakfast, run errands, straighten up the kitchen, do laundry, and make dinner. (Tr. 172). She had difficulty bending and shaving her legs was particularly difficult. (Tr. 173). She regularly cleaned the house but needed encouragement as she was frustrated and anxious often due to pain. (Tr. 174). She could only drive short distances. (Tr. 175). She enjoyed movies, scrapbooking, watching television, baking, and going on float trips. When she participated in these activities she had to frequently change position. (Tr. 176). Plaintiff stated she needed to have restrooms in close proximity at all times due to her bowel issues. (Tr. 178-79).

---

³ The date last insured is relevant to the claim for DIB, but not the claim for SSI. See, 42 U.S.C. §§ 423(c) & 1382(a).

6

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing on July 5, 2012. (Tr. 27). She was a 47-year-old high school graduate at the time of the hearing but had no additional education or training. (Tr. 29). Plaintiff was 5'6", 220 pounds, and smoked one pack of cigarettes per day. (Tr. 32).

She previously worked as a cashier at a drugstore, a package sorter at UPS, a cashier at a White Castle, a "keyholder" at a Dirt Cheap Cigarettes store, an agent's assistant for American Family Insurance, and an administrative assistant at Bell and Osborn, an auto body shop. (Tr. 29-31). She was let go from her job at Bell and Osborn because her performance was no longer adequate. (Tr. 31-32).

After she was fired from Bell and Osborn, plaintiff applied for and received unemployment. (Tr. 32).

She testified to taking six Vicodin pills a day for pain in her back and abdomen. (Tr. 33-35). She needed assistance in the restroom and had difficulty shaving her legs, tying her shoes, and washing her hair. (Tr. 37). She had to use a scooter when grocery shopping and she was given a disabled parking sticker. (Tr. 38). Driving more than a few miles was difficult for plaintiff because pushing the gas and brake pedals caused pain. (Tr. 39). She testified to having continuous bowel problems and needed to be near restrooms to avoid having accidents. (Tr. 40-41). Plaintiff felt that resting was one of the few things that made her symptoms feel better. (Tr. 40).

A vocational expert (VE) also testified. The ALJ asked the VE to assume a person who was able to lift and carry twenty pounds occasionally, ten pounds frequently, and stand, walk or sit for six hours out of eight. The person would be limited to occasionally climbing stairs and ramps, stooping, kneeling, and crouching. The person could never climb ropes, ladders, or scaffolds and was to avoid concentrated exposure to hazards of unprotected heights and vibration. (Tr. 43). The VE testified that this person could perform plaintiff's past work as an insurance office clerk, office manager, and a cashier. (Tr. 43-44). When the ALJ added an option to sit, stand, and change position at will and lift less than ten pounds, all the jobs remained. (Tr. 45).

The VE also testified that if the hypothetical person was limited to occasional reaching, or needed to lie down during the workday outside of normal breaks, plaintiff's former work would be eliminated. (Tr. 45-46).

### 3. Medical Treatment

In 2004, plaintiff underwent her first surgery to repair a ventral hernia with mesh. (Tr. 367-68). Plaintiff continued to have pain post operatively. In April 2007 plaintiff returned to her surgeon, Dr. Troop, for an examination. (Tr. 392). Plaintiff had seen another surgeon who told her she had an additional hernia that was not part of her previous hernia repair. The mesh that was previously installed was seemingly problematic. Dr. Troop explained he could remove the mesh, but it would be a rather large surgery and may not help with her current pain. (Tr. 391).

In May, 2007, plaintiff returned to the doctor and it was noted the previously installed mesh was recalled. After a CT scan was performed, it was apparent the mesh was defective. After further examination the mesh appeared to be intertwined with plaintiff's bowels. (Tr. 361). In November 2011, plaintiff had a second surgery to repair her hernia. (Tr. 434). Plaintiff continued to have pain, however, and a CT scan in 2009 revealed two separate ventral incisional hernias along her abdomen. (Tr. 474-75). Plaintiff underwent her third hernia surgery in August 2009. She had several adhesions and the previous mesh was unable to be removed. (Tr. 508-510).

Plaintiff saw specialists at Pain Management Services for a number of years as her pain continued. (Tr. 276-285, 468-473, 495-500). In 2010, plaintiff visited one of her regular physicians there, Dr. Allen, and he advised her that any additional surgeries on her abdomen were not a good idea. (Tr. 276). Plaintiff was regularly prescribed narcotics before and after her several surgeries and Dr. Allen continually adjusted these medications to provide relief. Dr. Allen also gave Plaintiff a disabled placard for her license plate. (Tr. 282).

In 2011 plaintiff regularly saw a professor of surgery at Washington University, Dr. Matthews, to evaluate her chronic abdominal pain. (Tr. 255-69). He had a lengthy conversation with plaintiff regarding her options for her future, including an additional surgery. He discussed the extensive risks and that fact that an additional surgery may not provide relief. (Tr. 259). Plaintiff then consulted with Dr. Allen who advised against an additional surgical procedure.

(Tr. 285). In 2012 Dr. Smith, another doctor plaintiff regularly saw at Pain Management Services, noted plaintiff was not a candidate for additional surgery. (Tr. 496). Plaintiff elected to conservatively treat her hernias with medication. (Tr. 259, 285, 484). Dr. Smith attempted to start plaintiff on Methadone in order for plaintiff to no longer rely on hydrocodone. The Methadone made plaintiff ill and she thereafter resumed taking up to six hydrocodone pills a day for pain. (Tr. 499). Plaintiff also saw Dr. Redel, a family physician, throughout 2011. He helped plaintiff with her pain medications and referred her to the specialists she continually visited. (Tr. 244-254).

Since 2005 plaintiff was also regularly prescribed medications for anxiety and depression by several different treating physicians. (Tr. 401-409, 468-474). Additionally, in 2012 plaintiff had an MRI that showed disk bulging at T11-12, T12-L1, and L1-L2. She had mild right femoral stenosis and mild facet osteoarthropathy. (Tr. 501-502).

### 4. Disability Determination Services

In June 2011, plaintiff had a psychiatric review technique performed by Robert Cottone, PhD. He noted plaintiff had not had any mental health intervention other than through her primary care physicians. He stated there was no mental condition and the medications she received were related to pain and discomfort from her hernia surgeries. (Tr. 304). Dr. Cottone concluded plaintiff had no medically determinable impairment. (Tr. 294).

Plaintiff also had a physical RFC completed in June 2011 by Nola Townley. No medical consultant's code was listed and the record does not state Ms. Townley is a medical professional. Ms. Townley performed the RFC based on the record and felt plaintiff was able to occasionally lift twenty pounds, frequently lift ten pounds, stand, walk, or sit for six hours with normal breaks, pushing or pulling was limited in her lower extremities. (Tr. 307). Plaintiff could occasionally stoop, kneel, crawl, climb a ramp or stairs, frequently balance or crouch, and never climb a ladder, rope, or scaffold. (Tr. 308).

**5. Records Not Before the ALJ**

After the ALJ issued his decision, plaintiff submitted additional medical records to the Appeals Council in connection with her request for review.  See, AC Exhibits List, Tr. 5.  Thus, the medical records at Tr. 537-54, designated by the Appeals Council as Exhibits 21F and 22F, were not before the ALJ.

The medical records at Tr. 537-54 cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. Records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error." *Luna v. Shalala*, **22 F.3d 687, 689 (7th Cir. 1994).**  See also, *Getch v. Astrue*, **539 F.3d 473, 484 (7th Cir. 2008);** *Rice v. Barnhart*, **384 F.3d 363, 366, n. 2 (7th Cir. 2004).**

## Analysis

The Court agrees with plaintiff's contention the ALJ failed to properly assess plaintiff's RFC.

First, the ALJ improperly weighed the treating physicians' opinions. The ALJ never explained how much weight, if any, he chose to give plaintiff's treating physicians' opinions. "An ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection." *Jelinek v. Astrue*, **662 F.3d 805, 811 (7th Cir. 2011).** The ALJ is required to consider a number of factors in weighing a treating doctor's opinion. The applicable regulation refers to a treating healthcare provider as a "treating source." 20 C.F.R. §404.1527(c)(2) states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

Very little of the ALJ's opinion even mentions plaintiff's treating physicians. In one paragraph, the ALJ felt the treating physicians did not offer opinions plaintiff was disabled nor did they provide recommendations that plaintiff was unable to work. The ALJ referred to a five day work excuse from one of plaintiff's treating physicians as evidence plaintiff was capable of returning to work. (Tr.

12

19). The ALJ used no other portion of plaintiff's extensive medical records to support his belief that the treating physicians felt plaintiff was not disabled.

Plaintiff saw doctors at Pain Management Services thirteen times from 2008 through 2012. (Tr. 276-94, 468-500). Drs. Allen and Smith had extensive history with plaintiff and the ALJ never discussed how their opinions factored into his RFC. Plaintiff also saw a primary care physician and multiple surgeons regularly. (Tr. 228-76, 361-467). Again, the ALJ failed to mention how this treatment history weighed in his decision making process. The ALJ is not required to give their opinions controlling weight, but he is required to evaluate every medical opinion he receives. **20 C.F.R. §404.1527(c)**

The only other portion of the ALJ's opinion that references a treating physician's opinion is in reference to plaintiff's refusal to undergo an additional surgery. (Tr. 18). One of plaintiff's treating physicians presented a fourth surgery as an option for plaintiff's pain treatment. (Tr. 475-484). The ALJ relies on plaintiff's refusal to undergo surgery to indicate a lack of pain consistent with her complaints. (Tr. 18). However, Plaintiff was told by two of her other treating doctors not to undergo an additional surgery after her previous three had failed. (Tr. 276, 285, 497).

The ALJ felt plaintiff's refusal to stop smoking was the cause of her refusal to undergo an additional procedure even though he acknowledged plaintiff could not afford an additional surgery and that the doctor stated the procedure was not guaranteed to provide relief. (Tr. 18). The record does show plaintiff was advised

13

she would have to stop smoking if she chose to have another surgery and that she understood. (Tr. 484). The record does not establish that the doctors felt plaintiff's smoking was the reason she chose to not undergo surgery nor did plaintiff state this as a reason. Additionally, the ALJ failed to acknowledge the multiple instances in the record where plaintiff was explicitly advised against surgery. (Tr. 276, 285, 497).

He also fails to mention plaintiff had three previously unsuccessful surgeries for the same issue. (Tr. 367-68, 434, 508-10). The ALJ actually fails to mention plaintiff's three previous surgeries anywhere in his opinion other than in his determination that plaintiff's depression was not a medically determinable impairment. (Tr. 17). Inferring that plaintiff's unwillingness to quit smoking was the reason for her decision not to undergo another surgery, in conjunction with his refusal to acknowledge the treating doctors' opinions and plaintiff's prior surgical history, was error.

The ALJ did state the amount of weight he gave to three opinions of non-treating sources. He gave Ms. Townley's RFC opinion some weight while admitting it was not clear if she was an acceptable medical source. He gave Dr. Cottone's psychiatric review technique great weight as he felt it was supported by the record. Finally, he did not give significant weight to plaintiff's sister's report as she was not a disinterested third party. (Tr. 19). While the ALJ is correct in giving weight to these opinions, he is not permitted to "cherry-pick" the evidence, ignoring the parts that conflict with his conclusion. *Myles v. Astrue*, **582 F.3d**

**672, 678 (7th Cir. 2009).** He is not required to mention every piece of evidence, but "he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Godbey v. Apfel*, **238 F.3d 803, 808 (7th Cir. 2000)**. Plaintiff correctly points out that the ALJ failed to discuss how the medical evidence supports his RFC findings.

The ALJ then looked at plaintiff's daily activities and determined she was capable of work. (Tr. 18). The 7th Circuit has repeatedly held it is appropriate to consider these activities but it should be done with caution. The ability to perform daily tasks "does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, **705 F.3d 631, 639 (7th Cir. 2013).** Plaintiff's daily activities can all be done with significant limitations and do not indicate she can complete an entire workday or workweek. Additionally, the ALJ failed to explain how her daily activities translated into her working capabilities. The 7th Circuit has held the ALJ must build a logical bridge to his conclusions in these instances. See *Hamilton v. Colvin*. **525 Fed. Appx. 433, 438 (7th Cir. 2013)**(establishing an ALJ must do more than merely mention activities a claimant undertakes to establish the ability to work).

The ALJ stated plaintiff had never been fired or laid off because of problems with authority figures or getting along with other people. He felt this fact provided evidence of plaintiff's ability to work. (Tr. 19). However, he fails to acknowledge she was fired for her inability to perform work at an adequate level due to her disabilities. (Tr. 31-32, 36). The ALJ needed to acknowledge this fact

and show how plaintiff's record established she was capable of returning to this work.

ALJ Schum also relied upon the fact that plaintiff received unemployment benefits during the period at issue to determine she was not disabled. The 7th Circuit has held that when an ALJ chooses to consider this he must analyze the surrounding facts. **Scrogham v. Colvin, 2014 U.S. App. LEXIS 16517, at 34-35 (7th Cir 2014).** Similarly to *Scrogham*, the ALJ here failed to take into consideration the potentially progressive nature of plaintiff's disabilities as she has degenerative back problems and continuous hernia issues.

Additionally, the record shows plaintiff did not have the monetary resources to visit the doctor frequently or pursue a fourth surgery. (Tr. 33, 276). The 7th Circuit has established that a "desperate person might force herself to work-or in this case, certify that she is able to work- but that does not necessarily mean she is not disabled. *See Gentle v. Barnhart,* 430 F.3d 865, 867 (7th Cir.2005); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir.2003)." **Richards v. Astrue, 370 Fed. Appx. 727, 732 (7th Cir. 2010).** In *Richards*, the claimant testified that she sought unemployment benefits because she had no other source of income. *Ibid*. While plaintiff here did not testify to having the same situation, the ALJ failed to question her as to this fact. He inferred her ability to work by her application for benefits and sought no further explanation.

The ALJ is "required to build a logical bridge from the evidence to his

conclusions." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). ALJ Schum simply failed to do so here. He did not adequately address evidence in opposition to his opinion, misstated the record, and failed to explain his conclusions on multiple instances. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012), citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

It is not necessary to address plaintiff's other points at this time. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Lisa M. Taylor's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: October 8, 2014.**

**s/ Clifford J. Proud**

**CLIFFORD J. PROUD**

**UNITED STATES MAGISTRATE JUDGE**